533 A.2d 1127

City of Philadelphia, Appellant *v.* Anna Marie Messantonio, Appellee.

Argued September 15, 1987, before Judges BARRY and COLINS, and Senior Judge BARBIERI, sitting as a panel of three.

*Miriam B. Brenaman,* Assistant City Solicitor, with her, *Handsel B. Minyard,* City Solicitor, *Norma S.*

*Weaver,* Chief Deputy in Charge of Claims, *Barbara R. Axelrod,* Divisional Deputy in Charge of Appeals, for appellant.

*Bruce W. Vosburgh,* with him, *Elena Yandola, Margolis, Edelstein, Scherlis, Sarowitz & Kraemer,* for appellee.

OPINION BY JUDGE COLINS, December 1, 1987:

The City of Philadelphia (City) appeals from an order of the Court of Common Pleas of Philadelphia County which found for Anna Marie Messantonio (appellee), that the City was liable for contribution. We affirm.

On May 28, 1971, appellee struck and injured seven-year old Vandelyn Box while appellee was driving her automobile in a southerly direction on East River Drive.[1] Ms. Box was a pedestrian attempting to cross East River Drive in a westerly direction from the southeast corner of Midvale Avenue.

The sum which the Court of Common Pleas jury awarded Ms. Box was determined inadequate by the trial judge. In lieu of retrying the matter, the parties settled on April 1, 1980.

On April 3, 1980, appellee initiated an action for contribution in the Court of Common Pleas. The trial court found the City liable to appellee for one-half of the Sixty Thousand, Five Hundred Dollar ($60,500.00) settlement which was entered into between Ms. Box and appellee, plus six percent (6%) interest from the date of the settlement.

---

[1] This scenic highway has since been renamed Kelly Drive in honor of John B. Kelly, Jr., noted civic leader and Olympic medal winning oarsman.

The City moved to vacate the trial court's finding in favor of appellee in the contribution action. On May 29, 1986, the trial court denied the City's motion.

The City maintains that the trial court erred in (1) finding that once the City elected to perform a discretionary duty, it had a duty to properly place and time traffic signals such that they could be seen and understood by pedestrians, or alternatively, to warn pedestrians of the danger created by the failure to do so; and (2) holding that a fact-finder may determine that a defendant is a joint tortfeasor with a plaintiff in a suit for contribution where the extent of the plaintiff's negligence is not adduced at trial.

Preliminarily, we note that this action arose between the Supreme Court of Pennsylvania's abolishment of the doctrine of governmental immunity in *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973), and the legislature's subsequent re-establishment of limited sovereign immunity pursuant to the Political Subdivision Tort Claims Act.[2]

The scope of review of an appellate court was recently discussed in *Rizzo v. Haines*, 357 Pa. Superior Ct. 57, 515 A.2d 321 (1986).

> In reviewing the findings of a trial judge, the test is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence, whether we could have reasonably reached the conclusion of the trial judge. . . . It is not within our province to find facts or substitute our judgment. *Id* at 63, 515 A.2d 324.

The City asserts that its acts in planning the intersection at Midvale Avenue and East River Drive were

---

[2] Act of November 26, 1978, P.L. 1399, formerly 53 P.S. §§5311.101-5311.803, repealed by Section 333 of the Act of October 5, 1980, P.L. 693.

discretionary and thus immune from a finding of liability. Relying upon *LaForm v. Bethlehem Township,* 346 Pa. Superior Ct. 512, 499 A.2d 1373 (1985), the City maintains that liability could be found if the workmanship or maintenance of the system were defective, but not for a defective plan. The City's reliance on *LaForm* is somewhat misplaced. That case stands for the proposition that a landowner, whether private or municipal, has no duty to install storm sewerage on his land. The court in *LaForm* noted that, "[w]here a landowner, whether municipal or private, undertakes to install storm sewer facilities, then he takes upon himself the duty to avoid negligence in their construction or maintenance." *Id.* at 531, 499 A.2d at 1382.

In *LaForm,* the City of Bethlehem was under no duty to accept, and did not accept, the Township of Bethlehem's plan to eliminate flooding of surface waters. Therefore, since the City did not elect to exercise a discretionary duty, it could not be held liable. However, in the instant case, although the City's duty was discretionary, it *did* erect a traffic light. In so doing, it became liable for the proper maintenance and construction of the traffic light. *LaForm.*

The trial court found, and we agree, that although the City had no initial duty to erect and maintain traffic controls at this intersection, once it undertook this discretionary duty, it was required to erect and control the traffic signals in a non-negligent manner. The Court held:

> [T]he duty to protect Box in this case arises from the City's decision to control traffic in a way that actively misleads pedestrians. If no traffic signals were placed at this intersection, Ms. Box would have had to take her chances when she crossed the street. The City would not be held responsi-

ble for failing to place the lights at the intersection . . . (citations omitted).[3]

The Court of Common Pleas also concluded at trial that the City violated statutory standards found at 75 Pa. C. S. §1110(e),[4] for the proper design or erection of traffic signals.

The Second Restatement of Torts, Section 323(a) provides authority for finding the City's liability in this matter:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking if
>
> (a)  His failure to exercise such care increases the risk of such harm, or
>
> (b)  The harm is suffered because of the other's reliance upon the undertaking.

The Court of Common Pleas found that the City "violated traffic engineering. standards and standards of due care by placing a traffic light where a pedestrian crossing the roadway could not see the light and for setting a trap for the pedestrian by having the northbound traffic stop while the southbound traffic was permitted to proceed."[5]

---

[3] Page 10 of the Court of Common Pleas of Philadelphia County, Judge R. B. KLEIN's opinion.

[4] 75 Pa. C. S. §1110(e), in effect at the time of the accident, specifically provided that: "Signal faces shall be located so as to give drivers and pedestrians a clear and unmistakable indication of the right of way assignment from their normal positions on the approaches and as they enter or pass through the intersection area."

[5] Page 2 of the Court of Common Pleas of Philadelphia County, Judge R.B. KLEIN's opinion.

The record adequately establishes a basis upon which the Court could make these conclusions. The testimony of Ms. Box establishes that the shields surrounding the lights made it impossible for her to see the lights. James Coleman, appellee's expert witness, a former traffic signal supervisor for the City of Philadelphia, testified that the lighting sequence at the intersection at the time of the accident did not provide for safe pedestrian crossing at any time. The testimony established by appellee's witness, John Comiskey, a traffic engineer, was that the traffic signals erected by the City were inadequate for pedestrians, based on standard engineering principles. The Court of Common Pleas correctly concluded that the lack of visibility of the traffic signal faces and the time sequence of the traffic signals were substantial factors in the cause of the accident. *See Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978).[6] In making this decision, the court also recognized the proximity of the intersection to a school and a park.[7]

We emphasize that by this decision, we are not deviating from the holding in *Mindala v. American Motors*,

---

[6] Our Supreme Court in *Hamil* held that once a plaintiff has demonstrated that the defendant's acts or omissions have increased the risk of harm to another, such evidence furnishes a basis for the factfinder to go further and find that such increased risk was in turn a substantial factor in bringing about resultant harm.

[7] During the third day of trial, the judge stated:
[I]t is almost akin to an attractive nuisance doctrine. There is a park bench across the street where you can sit there and look at the grass or watch the river and maybe the boaters go by. . . . There is no way to get there unless you cross the street. And it is also in a residential neighborhood. Kids play in parks.
The City advertises that Fairmount Park is the largest municipal park in the world and encourages people to go there, and they put up a park and set up a major roadway where you can't get to the park. . . .

90 Pa. Commonwealth Ct. 366, 495 A.2d 644 (1985) and *Rinaldi v. Giblin,* 70 Pa. Commonwealth Ct. 253, 452 A.2d 1126 (1982), that municipalities are not under any duty to erect or maintain traffic control signals in the absence of a legislative mandate compelling them to do so. We rather hold that once the municipality has undertaken a discretionary duty to control traffic through the use of traffic signals or control devices, that it may be held liable for the negligent erection or maintenance of these devices in the absence of the shield of governmental immunity.

Next, the City argues that there was insufficient evidence upon which the trial court could conclude that the City's negligence was a cause of the accident and that the City was a joint tortfeasor because appellee was not present to testify to her own negligence. The City asserts that appellees cannot resolve the issue of her liability by an admission, and that her admission could not be made by her attorney. We do not need to resolve these issues. Once facts have been established by the plaintiff which lead one to reasonably conclude that a defendant's actions were a substantial factor in bringing about the harm, the fact that some other cause concurs with the negligence of the defendant in producing the injury does not relieve the defendant from liability unless he can show that the other cause would have produced the injury independently of his negligence. *Hamil.*

Appellee conceded her liability. The evidence in the record adequately supports the trial court's finding that the City's negligence was a cause of the accident and that appellee and the City were joint tortfeasors.

Accordingly, we affirm the order of the Court of Common Pleas of Philadelphia County which holds the City liable.

ORDER

AND NOW, this 1st day of December, 1987, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby affirmed.